UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
    **JUDGE**

LETTER OPINION

July 7, 2009

Samuel J. Halpern, Esq.
347 Mt. Pleasant Avenue, Suite 203
West Orange, NJ 07052
*Attorney for Plaintiff*

Thomas Rattay
Oagletree, Deakins, Nash, Smoak, & Stewart
10 Madison Avenue, Suite 402
Morristown, NJ 07960
*Attorneys for Defendant*

      Re:   *Manuel Araujo v. Kraft Foods Global, Inc. Administrative Committee*
             Civil Action No. 08-CV-843 (WJM)

Dear Litigants:

    This matter comes before the Court on Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Oral arguments were not held. Fed. R. Civ. P. 78. For the reasons set forth below, Defendant's motion is **GRANTED**.

**I.    BACKGROUND**

    Plaintiff Manuel Araujo ("Araujo") worked for Nabisco, Inc. ("Nabisco") from 1970 until the company was acquired by Kraft Foods Global, Inc. ("Kraft") in 1999 or 2000. Compl. ¶¶ 4, 7. He continued to work for Kraft until November 2001, for a total of 31 years of service. Compl. ¶ 11. Plaintiff's employment enabled him to enroll in the Plan for Pensions of Nabisco, Nabisco's employee benefits plan. Compl. ¶ 5. The benefits plan was renamed the Nabisco, Inc. Flat Dollar Pension Plan (the "Plan") in January 2001. Compl. ¶ 8.

    Article III of the Plan describes the various pension benefits available to enrolled

employees, including a "Normal Retirement Pension," an "Early Retirement Pension," a "Disability Retirement Pension," a "Job Elimination Retirement Pension," and a "Deferred Vested Pension."  Section 3.05 of the Plan describes a Job Elimination Retirement Pension" ("JERP") and states that " [a] Participant with 10 or more Vesting Years of Service, who is at least 55 and has a termination of employment due to job elimination may elect to receive a Job Elimination Retirement Pension."  Rattay Certif., Ex. B.

Nabisco also issued a Summary Plan Description ("SPD") to the covered employees.  Section 3 of the SPD describes a JERP as follows: "A Job Elimination Pension is payable monthly for life to Participants who retire as a result of the elimination of their job and who are at least age 55 with 10 years of Vesting Service."  The SPD goes on to say that if "employment is terminated due to job elimination and you are at least age 55 and have completed at least 10 years of Vesting Service, you will be eligible for a Job Elimination Retirement Pension."  Rattay Certif., Ex. C.

In 2001, Kraft decided to close the New Jersey facility at which Plaintiff worked.  Compl. ¶ 9.  In October 2001, Kraft and Plaintiff's union signed a Memorandum of Agreement ("the Memorandum") describing the closure of the plant.  *Id*.; Rattay Certif., Ex. E.  Pursuant to the Memorandum, Plaintiff was given the option of transferring to another plant or terminating his employment and accepting a severance package.  Significantly, the Memorandum contained a "bridging provision" (the "Bridging Provision") applicable to employees who elected to terminate and receive severance.  The Bridging Provision stated that employees close to meeting the eligibility requirements for a JERP at the time of termination could spread out their severance payments over an extended period of time to help them attain the age requirement, the vesting service requirement, or both.[1]  Rattay Certif., Ex. E.

Plaintiff chose to retire and receive severance.  He did so under the belief that the SPD enabled employees to receive a JERP at age 55 even if the job elimination occurred earlier.  Compl. ¶ 11.  Plaintiff is not a native English speaker and has some difficulties with the language.  However, he receives assistance from his son with reading documents.  Pl.'s Rule 56 Counterstatement of Facts.  Plaintiff's employment ended November 2, 2001, but he received a severance package paying him his weekly salary through June 7, 2002, as well as an additional lump sum. He also signed an agreement waiving future employment with Kraft.  Compl. ¶ 11.

In September 2002, Plaintiff received a letter from Kraft regarding his pension eligibility.  The letter informed him that he was eligible to start receiving his Vested Pension at age 65 but could elect to receive an actuarially reduced Deferred Vested Pension ("DVP") beginning at age 55.  Compl. ¶ 12.  In July 2003, Plaintiff's counsel wrote to Kraft asking why Plaintiff was not eligible for a JERP, which paid more than a DVP, should he elect to start receiving his benefits at age 55. Plaintiff did not receive a response.  Compl. ¶ 13.

Plaintiff elected to receive his benefits starting at age 55 and began receiving his DVP on April 1, 2004.  Compl. ¶ 14.  On February 16, 2005, Plaintiff filed a formal claim with Kraft to adjust his pension from a DVP to a JERP.  Plaintiff alleged that he qualified for a JERP even

---

[1] Note that if Plaintiff had elected to use the Bridging Provision and spread out his severance payments over the maximum period allowed, his severance would have ended on January 8, 2003.  On that date, Plaintiff was 53 years old.

though he was not 55 at the time of his termination. Compl. ¶ 15. Kraft's Administrative Committee (the "Administrative Committee" or "Defendant") denied the request. Compl. ¶ 16. The denial letter also noted that even if Plaintiff had chosen to use the Bridging Provision, he still would not have qualified for a JERP. Plaintiff appealed the decision but was again denied in September 2005. Compl. ¶ 17.

On February 15, 2008, Plaintiff filed a complaint in federal court, alleging that Defendant had violated the Employee Retirement Income Security Act ("ERISA") by awarding him a DVP instead of a JERP. Specifically, he alleged that the SPD was misleading, such that (1) Kraft should be estopped from denying him the JERP; and (2) Kraft breached its fiduciary duty.

## II.   DISCUSSION
### A.   Summary Judgment Standard

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

### B.   Count I– Detrimental Reliance/ Equitable Estoppel Claim
#### 1.   Extraordinary Circumstances

The plain language of Plaintiff's first count alleges detrimental reliance. However, there is no such claim under ERISA (and any non-ERISA claim would be preempted and subject to dismissal). Both parties have agreed to treat Count I as a claim for equitable estoppel under ERISA. Def.'s Br. 1 n.1; Pl.'s Opp. Br. 5 n.1.

A claim for equitable estoppel under ERISA requires: (1) a material representation; (2) reasonable and detrimental reliance on the representation; and (3)extraordinary circumstances. 29 U.S.C. § 1132(a)(3); *Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 383 (3d Cir. 2003). Defendant does not deny that the SPD constituted a material representation or that Plaintiff reasonably relied on that representation to

3

his detriment. However, Defendant does refute the existence of extraordinary circumstances.

Courts have found extraordinary circumstances to exist when the defendant acted in bad faith, attempted active concealment, committed fraud, or intended to profit at the plaintiff's expense. *Burstein*, 334 F.3d at 383. Plaintiff does not allege the existence of these factors, however. And indeed, Kraft's inclusion of the Bridging Provision in the Memorandum would tend to show that Kraft, in conjunction with the union, has tried to help employees qualify for benefits, not prevent them from doing so.

Rather, Plaintiff focuses on a body of caselaw that has found extraordinary circumstances to exist where (1) the plaintiff is vulnerable; and (2) the defendant has engaged in inequitable conduct. *Kurz. v. Phila. Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996) (citing *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d Cir. 1994)). Plaintiff alleges that because he was not born in the U.S. and has difficulties with the English language, he is vulnerable in this context. However, this argument is unavailing. No court has ever found immigration status or language difficulties to constitute vulnerability in this context. The only plaintiffs deemed vulnerable with respect to extraordinary circumstances have been those with dealing with imminent and life threatening health emergencies to themselves or close family members. *See Smith v. Hartford Ins. Group*, 6 F.3d 131, 142 (3d Cir. 1993) (finding that a plaintiff who had suffered a cerebral hemorrhage and required continuous nursing care qualified as vulnerable); *see also Curcio*, 33 F.3d at 238 (finding that a plaintiff who learned of her husband's death in a car accident qualified as vulnerable). Plaintiff's minimal language difficulties fall short. Plaintiff has lived in the U.S. for over 30 years and furthermore receives reading assistance from his son.

More significantly, Plaintiff cannot prove that Defendant engaged in inequitable conduct. Plaintiff alleges that the SPD was misleading, the Memorandum was misleading, the SPD conflicted with the Plan, and the Defendants could have been more clear. However, the Third Circuit has consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations, "such as a variation between a plan summary and the plan itself, or an omission in the disclosure documents." *Burstein*, 334 F.3d at 383.

Therefore, in the absence of extraordinary circumstances and evidence to support a finding claim for equitable estoppel under ERISA, Defendant's motion for summary judgment is **GRANTED** as to Plaintiff's first claim.

### C. Count II– Breach of Fiduciary Duty Claim
#### 1. Statute of Limitations

Defendant alleges that the breach of fiduciary duty claim is barred by the statute of limitations. The statute of limitations for a breach of fiduciary duty under ERISA is either six years from the date of the alleged breach or three years from the date the plaintiff had actual knowledge of the claim. 29 U.S.C. § 1113; *Kurz*, 96 F.3d at 1551. Actual knowledge of a breach requires that a plaintiff have actual knowledge of all material facts necessary to comprehend that a claim exists. *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992).

Defendant alleges that Plaintiff had actual knowledge of the alleged breach as early as September 2002, the date of the letter from Kraft advising him of his pension entitlements, or in the alternative, July 2003, when Plaintiff's counsel wrote to Kraft asking why Plaintiff was not entitled to a JERP, or in a final alternative, April 2004, when Plaintiff began receiving the

4

allegedly reduced benefits. Using any of these dates, Plaintiff's claim would be time barred.

However, caselaw shows that Plaintiff's claim is actually a claim for benefits under ERISA and as such is subject to an exhaustion requirement. *Harrow v. Prudential Ins. Co. of America*, 279 F.3d 244, 252 (3d Cir. 2002). Under this requirement, a plaintiff cannot file a case in federal court until exhausting all administrative remedies. Thus, the statute of limitations did not begin to run until Plaintiff exhausted his administrative remedies on September 20, 2005, when his appeal to Kraft was denied.[2] Plaintiff filed his complaint in February 2008. Therefore, his claim was timely filed and should be considered on the merits. Summary judgment is **DENIED** on this point.

### 2. Merits of Fiduciary Duty Claim

Plaintiff alleges that Defendant breached its fiduciary duty by disseminating an allegedly misleading SPD. A successful claim of breach of fiduciary duty under ERISA for misrepresentation must demonstrate that: (1) the defendant company was acting as a fiduciary; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan beneficiaries; (3) the information misrepresented or not disclosed was material; and (4) the plaintiff relied on the misrepresentation to its detriment. *Engers v. Am. Tel. & Tel. Co.*, 428 F.Supp. 2d 213, 239 (D.N.J. 2006).

An affirmative misrepresentation is established if the SPD and the Plan conflict. *See Nash v. Mercedes Benz USA*, 489 F. Supp. 2d 411, 415-416 (D.N.J. 2007). However, Plaintiff's allegations do not indicate a conflict between the two documents. An analysis of the wording used by each shows that in fact they are quite similar. Plaintiff alleges that the language and word order used in the SPD was "less clear" than that in the Plan, with respect to the requirement that the participant be age 55 at the time of the job elimination, However, "less clear" does not indicate a conflict. Indeed "it would defeat the purpose of having a summary of a full plan document if the SPD were to parrot all the terms of the plan document." *Burstein*, 334 F.3d at 379. Therefore, there is no evidence to support the existence of a conflict between the SPD and the Plan.

Moreover, an analysis of the determination of Plaintiff's benefits under an arbitrary and capricious standard shows that it was reasonable. The age provision in the JERP clause was immediately adjacent to the termination of employment provision, showing that it applied to the date of termination. Moreover, the existence of the bridging language in the Memorandum supports a finding that the determination of benefits was reasonable. If the Plan participant did not have to be 55 at the time of the job elimination, the Bridging Provision would not make any sense or serve any purpose. Therefore, Plaintiff's benefit determination was a reasonable interpretation of the Plan.

A comparison between the language of the Plan and the SPD, the plain language of the Plan, and the existence of the Bridging Provision indicate that there was no affirmative misstatement and that Defendant's determination of Plaintiff's benefits was reasonable. There is

---

[2] It can also be perceived that Plaintiff did not have actual knowledge of all material facts necessary to know a claim existed until his appeal was denied on September 20, 2005, at which point the three year statute of limitations began to run. However it is perceived, the claim was timely.

no issue of material fact and **Defendant's motion for summary judgment is GRANTED as to Count II.**

### III.   CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

                                                /s/ William J. Martini  
                                                **William J. Martini, U.S.D.J.**